RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOHN DOE,

　　　　　　　　　　　　　*Plaintiff-Appellant*,

　　v.

MICHIGAN STATE UNIVERSITY; ROBERT KENT, RICK
SCHAFER, and ARON SOUSA, M.D., in their individual
and official capacities, jointly and severally,

　　　　　　　　　　　　　*Defendants-Appellees*.

No. 20-1043

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00226—Paul Lewis Maloney, District Judge.

Argued:  October 23, 2020

Decided and Filed:  February 25, 2021

Before:  CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  Eric J. Rosenberg, ROSENBERG & BALL CO. LPA, Granville, Ohio, for
Appellant.  Scott R. Eldridge, MILLER, CANFIELD, PADDOCK, AND STONE, P.L.C.,
Lansing, Michigan, for Appellees.  **ON BRIEF:**  Eric J. Rosenberg, ROSENBERG & BALL
CO. LPA, Granville, Ohio, for Appellant.  Scott R. Eldridge, Kamil Robakiewicz, MILLER,
CANFIELD, PADDOCK, AND STONE, P.L.C., Lansing, Michigan, Brian M. Schwartz,
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellees.

　　　　GIBBONS, J., delivered the opinion of the court in which CLAY, J., joined, and
NALBANDIAN, J., joined in the disposition.  NALBANDIAN, J. (pp. 18–23), delivered a
separate concurring opinion.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge. This case arises from the investigation and eventual expulsion of John Doe from the Michigan State University College of Human Medicine ("CHM") for allegedly sexually assaulting two women, Roe 1 and Roe 2, on the night of the school's formal dance.

The two women reported to the university that Doe had sexually assaulted them, after which the university began an investigation led by an outside consultant. The consultant determined that the evidence supported a finding that Doe had indeed sexually assaulted the women. Then, the CHM convened a panel, which affirmed the findings without an in person hearing. While this process was ongoing, we released *Doe v. Baum*, holding that universities must offer an in person hearing with cross-examination in cases where the factfinder's determination depends on witness credibility. 903 F.3d 575, 581 (6th Cir. 2018). Accordingly, the CHM gave Doe an in person hearing, conducted over the course of three days before a Resolution Officer, who was an Administrative Law Judge selected by the university to oversee the hearing. At this hearing, Doe was permitted to testify and, through his attorney, to cross-examine Roe 1 and Roe 2. The Resolution Officer did not require Roe 1 to answer every question that Doe's attorney posed to her. Both Doe and his attorney were present throughout the entire hearing.

After considering the credibility of the witnesses including Roe 1, Roe 2, and Doe, the Resolution Officer again found that the evidence supported a finding that Doe had sexually assaulted the women. After these proceedings, and several years after the alleged sexual assaults, the CHM expelled John Doe.

Doe brought this suit against the university and several individual defendants, alleging that the university's proceedings violated the Due Process Clause, the Equal Protection Clause, and Title IX. The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim, and in response Doe sought to amend his complaint for a second time. The district court denied Doe's motion to amend and granted the defendants' motion to dismiss.

On appeal, Doe argues that (1) the district court erred in denying his motion to amend his complaint a second time and (2) the district court erred in dismissing his due process claim. Doe did not appeal the district court's decision as to his Title IX and Equal Protection claims. Because Doe received ample due process throughout the course of his three-day hearing, we affirm.

I.

A.

In April 2016, John Doe, Jane Roe 1, Jane Roe 2, and K.B. were first-year medical students at the CHM. Roe 1 was casually dating K.B., and Roe 2 was married to another man, J.M. On April 23, the four students attended a dance known as the Med Ball together. The group consumed alcohol before and during the Med Ball.

The parties dispute the events that took place that night. In reviewing a FRCP 12(b)(6) motion to dismiss, we must draw all reasonable inferences in favor of the plaintiff and accept all well-pleaded allegations as true. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016). As dictated by this standard, we accept and present Doe's account of the night for purposes of this appeal.

At the Med Ball Roe 1 and Doe danced together, at times "sexually grinding on each other." DE32, First Am. Compl., Page ID 713. Also at the dance, Roe 2 got into a fight with her husband J.M., and he left the venue, asking Roe 2 for a divorce. After this fight, Roe 1 looked for Roe 2, hoping to comfort her, but found her kissing K.B. (whom Roe 1 had been casually dating). Roe 1 returned inside and sat on a stairway that was at least somewhat secluded from the rest of the venue. Doe found Roe 1 on the staircase and sat down next to her. There, Roe 1 told Doe that she had seen Roe 2 and K.B. kissing.

On the staircase, Doe kissed Roe 1, who "responded by kissing [him] back, using her tongue." *Id.* at Page ID 714. After kissing for some time, they moved to the second floor of the

venue and entered a different stairwell, where they continued to kiss. Kissing led to touching, and Roe 1 took off her dress. Roe 1 presented herself for sexual intercourse by getting down on her hands and knees, and she asked Doe whether she could use his jacket to cushion her knees. Doe was unable to achieve a full erection, so the two did not have intercourse and returned to the lobby.

Shortly after this encounter, the group moved to a bar in Grand Rapids. At this bar, Doe and Jane Roe 2 moved upstairs to the dance floor, where they danced and kissed.

Eventually, the group returned to K.B.'s house, where Roe 2 and K.B. had sex in K.B.'s kitchen. Roe 1 was sleeping in K.B.'s bed. Doe joined Roe 1 on the bed, but was unable to sleep, so he moved to the sectional couch where Roe 2 lay awake. Roe 2 began grinding her buttocks against Doe, and they kissed. After kissing and touching for some time, Doe pulled Roe 2's dress up and touched her buttocks. Roe 2 told Doe either "I'm tired" or "no." *Id.* at Page ID 718. Doe stopped, moved to another part of the couch, and the two went to sleep.

B.

The encounters between Doe and Roe 1 and 2 took place in April 2016. In February 2018 the two women filed sexual assault claims with the university's Office of Institutional Equity ("OIE") against Doe for his conduct during the night in question. A complaint of this kind is investigated by the university to determine whether the conduct violated the university's Relationship Violence and Sexual Misconduct Policy ("RVSMP"). The university hired the external consultant, Kroll Associates, Inc., to investigate Roe 1 and Roe 2's allegations. Kroll conducted several interviews of Doe, Roe 1, Roe 2, and witnesses for Roe 1 and Roe 2. After Kroll's initial investigation, they sent Doe a letter informing him that the CHM would be moving forward with a formal investigation into whether he violated the RVSMP.

Kroll's investigation took place over the course of a year, and in February 2019 Kroll issued its Final Investigative Report, concluding that a preponderance of the evidence supported a finding that Doe had violated the RVSMP with respect to both Roe 1 and Roe 2. The CHM issued an interim suspension of John Doe on February 12, 2019. The CHM then held a three-panelist hearing with Doe on February 14, 2019, to determine whether the suspension would

continue.  The panel upheld the suspension, relying in part on Kroll's Final Investigative Report.  At that point, Doe was pulled out of medical rotations.

On February 18 Doe submitted his mitigation statement to the Dean of Students' Office regarding the sanctions against him.  On February 26, the Dean of Students' Office notified Doe that it would be recommending dismissal.

During these initial proceedings, the CHM was governed by a prior RVSMP.  The RVSMP was updated in February 2019 in accordance with this court's decision in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018).  *Baum*, decided in September 2018, held that when the determination of a university disciplinary proceeding depends on credibility, the accused has a constitutional due process right to "some form of cross-examination" of the claimant at an in person hearing.  *Baum*, 903 F.3d at 581.  This was a change from the prior RVSMP, which did not require an in person hearing with the opportunity for cross-examination.

On March 8, Doe appealed the CHM's findings and sanctions through the university's internal procedure.  That same day, the university notified Doe that his appeal was placed "on hold" while his case was reviewed to determine whether a hearing should have been offered pursuant to *Baum*.  On March 13, the OIE confirmed that Doe was due a hearing, and gave him a 7-day window to request one.  Doe did so on March 20 and also submitted a request that the university lift his interim suspension, which it denied.

On March 25, Doe filed this case in the Western District of Michigan against Michigan State University, Robert Kent (Interim Associate Vice President of the Office for Civil Rights and Title IX Education and Compliance), Rick Shafer (Associate Director of Student Conduct and Conflict Resolution), and Aron Sousa (Senior Associate Dean for the College of Human Medicine).  The complaint alleged a Title IX violation and violations of his due process and equal protection rights, brought under 42 U.S.C. § 1983.  Doe sought damages, a declaratory judgment, and injunctive relief reinstating him as a student.

Doe moved for a temporary restraining order and preliminary injunction to reinstate him as a student.  The court denied his motion.

The university's internal proceedings continued, and the OIE moved forward with the *Baum* hearing. On April 12, the university provided Doe with the case files, including the Final Investigative Report with Kroll's findings redacted. The OIE appointed Administrative Law Judge Mark Eyster from the Michigan Office of Administrative Hearings and Rules to serve as the Resolution Officer ("RO") in Doe's hearing.

RO Eyster conducted a hearing from May 13 through May 15, which consisted of in person testimony and cross-examination. During the three-day hearing, RO Eyster oversaw Doe's attorney's cross-examination of Roe 1 and Roe 2. RO Eyster allowed Roe 1 to refuse to answer an unspecified number of questions on cross-examination.

On May 22, RO Eyster issued his decision, finding by a preponderance of the evidence that John Doe had violated the RVSMP with respect to his conduct towards both Jane Roe 1 and Jane Roe 2. On June 11, the Dean of Students' Office again notified Doe that it was recommending dismissal, and Doe again appealed.

In this legal action, Doe amended his complaint to include facts and allegations regarding the *Baum* hearing, including the fact that RO Eyster permitted Roe 1 to refuse to answer an unspecified number of questions, on July 23. Doe was officially dismissed from Michigan State University on July 19, 2019.

On August 22, 2019, the defendants moved to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On October 3, 2019, Doe moved for leave to file a second amended complaint adding additional facts, changing the counts, removing some allegations and counts, and removing some parties from some allegations. On October 22, 2019, the district court denied this motion as both futile and untimely.

The district court granted the defendants' motion to dismiss on December 10, 2019 and Doe timely appealed the denial of his motion to amend and the grant of defendants' motion to dismiss.

II.

"This court reviews a denial of leave to amend a pleading for abuse of discretion, unless the district court denied leave based 'on the legal conclusion that an amended complaint could not withstand a motion to dismiss.'" *Boulton v. Swanson*, 795 F.3d 526, 537 (6th Cir. 2015) (quoting *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002)). We therefore review for abuse of discretion the district court's denial of Doe's motion for leave to file a second amended complaint on the grounds that the motion was untimely. On the other hand, this court reviews de novo the denial on grounds that the second amended complaint was futile, as this constituted a holding that the second amended complaint "would not withstand a motion to dismiss . . . for failure to state a claim." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003).

We review "de novo a district court's dismissal of a complaint for failure to state a claim." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). In reviewing Doe's claims, the court must accept "all well-pleaded allegations in the complaint as true," *id.*, and "consider[] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief," *id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (second alteration in original)). "Dismissal of a complaint for the failure to state a claim on which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

III.

Doe brings two arguments on appeal; first that the district court erred in denying his motion to file a second amended complaint, and second that the district court erred in dismissing his due process claim.

A.

We first address Doe's motion to file a second amended complaint. Doe first amended his complaint upon completion of his *Baum* hearing, adding facts and allegations arising from

the hearing, including allegations that Roe 1 was permitted to refuse to answer questions on cross-examination. He then requested to amend his complaint a second time, after the defendants had moved to dismiss for failure to state a claim, in part to add additional facts. Specifically, Doe sought to identify two specific categories of questions that Roe 1 refused to answer in the *Baum* hearing, one related to her attire and one related to her physical size and to "detail[] how MSU's refusal to provide him with the *Baum* hearing transcript prohibited him from provid[ing] additional examples of questions Roe 1 and 2 refused to answer." R. 22, Appellant's Br., 31−32. The district court denied his motion, holding that the proposed amendments were both futile and untimely. We affirm on both grounds, but we first address Doe's waiver of the timeliness ruling on appeal.

1.

As a preliminary matter, we agree with the appellees that Doe waived any appeal of the district court's decision regarding timeliness by failing to raise the issue in his initial brief. Generally, an "appellant abandons all issues not raised and argued in its initial brief on appeal." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 540 (6th Cir. 2014) (quoting *United States v. Johnson*, 440 F.3d 832, 845−46 (6th Cir. 2006)). "Furthermore, 'it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Johnson*, 440 F.3d at 846 (quoting *United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir. 1996) (citation and quotation marks omitted)).

The district court held that because Doe's motion failed to argue that the additional facts were newly discovered or provide an explanation as to why the delay was warranted, there was no excuse for the failure to "include [the] facts in his first amended complaint." DE45, Order Grant. Mot. to Dismiss, Page ID 1188. On appeal, Doe does not address the court's holding that the amendments were untimely. He states one standard of review, de novo, for dismissal on the grounds that the SAC would not survive a motion to dismiss. Nowhere does Doe's brief contest the district court's finding that the motion was untimely because the facts were "at least in his possession at the time of filing his first amended complaint, if not in his possession on the night of the incident that began this case." DE45, Order Grant. Mot. to Dismiss, Page ID 1188.

Doe attempts to argue that he could not identify specific cross-examination questions that Roe 1 and 2 refused to answer because MSU "withheld the *Baum* hearing transcript," but does not explain (1) why he could not include the specific instances based on his own or his attorney's recollection of the hearing, as both were present, or (2) why he did not include factual allegations about MSU withholding the transcript in his initial complaint.[1]  R.22, Appellant's Br., 33.

It is not until his reply brief that Doe argues that he did address the court's untimeliness holding, stating that his brief reference to the "spirit of FRCP 15," which "contemplates plaintiffs filing amended complaints at the time of necessary utility to the plaintiff," constitutes an argument that the motion was timely.  R.26, Reply Br., 24.  However, this paragraph fails to offer any explanation as to why these facts and allegations were omitted from the first two complaints, and a party cannot sustain an argument by addressing it in merely a "perfunctory manner, unaccompanied by some effort at developed argumentation." *Johnson*, 440 F.3d at 846 (quoting *Elder,* 90 F.3d at 1118 (citation and quotation marks omitted)).  As Doe's argument made at most a glancing reference to the timeliness of the motion to amend, we hold that he waived this issue on appeal.

2.

Regardless of his waiver, we would affirm the district court on the merits of its decision. We review the denial of Doe's motion to amend his complaint for untimeliness under abuse of discretion.  *See Boulton*, 795 F.3d at 537.  Abuse of discretion is a highly deferential standard, and the district court's findings "will be disturbed only if [it] relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir.1997). Federal Rule of Civil Procedure 15 allows district courts to "freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  "Denial may be appropriate, however, where there is 'undue delay'" in filing. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

[1]The reason for the failure to include factual allegations about the university's withholding the *Baum* transcript is quite clear: Doe never requested a copy.

Here, the district court correctly noted that leave to amend under Rule 15 should be granted "freely." DE45, Order Grant. Mot. to Dismiss, Page ID 1186. The court went on to explain that a request may be denied for undue delay in filing. The district court applied this standard correctly, noting that the facts that Doe sought to add in his SAC were available to Doe at the time of his first amendment, and that Doe failed to offer any excuse for omitting them when he first amended his complaint. Because the district court relied on accurate facts and properly applied the standard, we would affirm its decision on the merits had Doe not waived the issue on appeal.

3.

This court reviews the denial of the motion to amend for futility de novo. *Boulton*, 795 F.3d at 537. As noted above, leave to amend should be given "freely" and "when justice so requires." FED. R. CIV. P. 15(a)(2). However, a request may be denied if it would be futile, i.e., if the amended complaint would not withstand a motion to dismiss for failure to state a claim. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). As is relevant for purposes of this appeal, Doe attempted to amend his complaint to point to two specific categories of questions Roe 1 refused to answer and to add factual allegations that he was not permitted to record the *Baum* hearing, and without such a recording was unable to provide additional specific examples of questions Roe 1 did not answer. The specific categories of questions were "about [Roe 1's] attire on the evening in question" and about her "physical size." DE39, Second Am. Compl., Page ID 1024. The question before this court is whether the addition of these facts would lead us to conclude that Doe had stated a due process claim.

In deciding a motion to dismiss for failure to state a claim, the court must take all well-pleaded allegations in the plaintiff's complaint as true. *Iqbal*, 556 U.S. at 678–79. Doe's first amended complaint includes the following allegations:

> The Resolution Officer permitted Jane Roe 1 to refuse to answer questions on cross-examination, without penalty or negative inference as a result.
>
> The Resolution Officer denied John Doe the opportunity to ask relevant questions on cross-examination through his counsel.

DE32, First Am. Compl., Page ID 736. Doe's due process claim rested in relevant part on the

argument that allowing a complainant to refuse to answer questions on cross-examination that had been pre-approved by the RO was a violation of this court's holding in *Baum*. In taking all well-pleaded allegations as true, we accept Doe's allegations from the first amended complaint that Jane Roe 1 was allowed to refuse to answer questions. As described below, Doe received extensive process throughout a three-day hearing. *See infra* Part III.B. If the general factual allegation in the complaint properly before this court cannot survive a motion to dismiss, a more specific allegation pointing to two actual questions that Roe 1 did not answer will likewise be insufficient. The issue is not necessarily the content of the questions, but whether permitting the complainants to refuse to answer some small number of questions throughout the course of a three-day hearing is a violation of Doe's due process rights. It is not. Regardless, if we were to find that knowledge of the specific questions that Roe 1 was not forced to answer was relevant, it would not change our conclusion that there was no denial of due process in Doe's case.[2] There is no compelling argument that, with all the process that Doe received, forcing Roe 1 to answer questions about her clothes and physical size was necessary to vindicate his constitutional rights.

Doe's SAC also added the allegation that he was not allowed to record the *Baum* hearing, and that the University was in "sole possession" of the recording of the hearing. DE39, Second Am. Compl., Page ID 1025. The SAC does not allege either Doe or his lawyer at any point requested a transcript of the hearing, or that their request was denied. At oral argument, Doe's lawyer repeatedly asserted that the university was withholding the *Baum* transcript in violation of his client's due process rights. This was a mischaracterization of the facts, which are that both Doe and his attorney were present for the entire hearing and both failed to request a transcript from the university at any point. Further, while the Constitution does require that "the student be provided the evidence against him," there is no indication that this evidence includes the transcript of a *Baum* hearing. *Doe v. Miami Univ.*, 882 F.3d 579, 603 (6th Cir. 2018). Far from withholding the evidence against Doe, the university provided him with the case file, including

---

[2]While the specific unanswered questions alleged in the SAC—namely whether "Jane Roe 1 had removed her own clothing on the night in question" and "Jane Roe 1's relative size to John Doe"—may have been relevant to the issues of consent and use of force in effectuating a sexual assault respectively, any error in allowing Roe 1 to refuse to answer these questions is rendered harmless by the extensive proceedings and ability to cross-examine witnesses against him that John Doe had in this case and does not amount to a due process violation. DE39, Second Am. Compl., Page ID 1025.

the Kroll report. There is no plausible suggestion in the SAC that the university withheld evidence in violation of Doe's due process rights.

Because the SAC was both untimely and futile, we affirm the district court.

B.

Second, Doe argues that the district court erred in granting defendants' motion to dismiss because his hearing violated his due process rights, as laid out in *Baum* and *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). Because Doe received extensive due process throughout his hearing, we disagree and affirm the district court.

1.

*Mathews v. Eldridge* provides the test for courts to determine what procedures are required when a plaintiff has interests at stake. 424 U.S. 319 (1976).

> Under *Mathews*, the level of process the Fourteenth Amendment requires is determined by balancing three factors: (1) the nature of the private interest affected by the deprivation; (2) the risk of an erroneous deprivation in the current procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the governmental interest involved, including the burden that additional procedures would entail.

*Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016) (citing *Mathews*, 424 U.S. at 335). This court has applied *Mathews* in the context of campus sexual assault proceedings, laying out the following framework for what is required.

In 2016, this court decided *Cummins*, 662 F. App'x at 437. The plaintiffs, Doe 1 and Doe 2, were accused of sexually assaulting fellow students at the University of Cincinnati. *Id.* at 438. One was suspended, while the other was put on disciplinary probation following a university proceeding to determine whether, by a preponderance of the evidence, the two were "responsible" for violating the university's Code of Conduct. *Id.* at 438; *id.* at 440−42. The proceedings culminated in two separate hearings, at which Doe 1 and Doe 2 were permitted to submit written questions to the panel overseeing the hearings, who then posed the questions to the claimants. *Id.* at 441. The panel refused to ask "a number of written questions that Doe 1 submitted." *Id.* The two students brought a claim in federal district court, alleging in part that

the university's hearing had deprived them of their right to due process because it did not allow for effective cross-examination of adverse witnesses. *Id*. at 445. We applied the *Mathews v. Eldridge* balancing test to determine what procedures due process required for the students. *Id.* at 446−47. We considered the students' liberty interest and the burden on the university, and held that "due process may require a limited ability to cross-examine witnesses in school disciplinary hearings where, like here, credibility is at issue," and that the "requirement was satisfied in this case." *Id.* at 448 (internal citations omitted).

The next year, we decided *Doe v. University of Cincinnati*, which built on *Cummins*. 872 F.3d at 393. In *University of Cincinnati*, plaintiff John Doe was accused of sexually assaulting a fellow student and was suspended for one year from school following a hearing where the claimant was not present, depriving him of any right to cross-examination. *Univ. of Cincinnati*, 872 F.3d at 398. Again applying *Mathews*, we weighed Doe's interest (the impact that a finding of responsibility for a sexual offense would have on his life) with the burdens imposed by additional procedural safeguards and the risk of erroneous deprivation of his interest in the absence of those additional safeguards. *Id*. at 400. We held that where the deprivation is severe, such as suspension from the school and the accompanying harm to Doe's reputation, and the credibility of the accuser is at issue, a denial of cross-examination is a denial of due process. *Id.* at 402. In our decision, we stressed that cross-examination is a necessary tool for the trier of fact because it "takes aim at credibility like no other procedural device." *Id.* at 401.

In *University of Cincinnati*, we also acknowledged the potential harm that unfettered cross-examination could pose to victims of sexual assault. *Id*. at 403 ("Strengthening those procedures is not without consequence for victims. 'Allowing an alleged perpetrator to question an alleged victim directly may be traumatic or intimidating, thereby possibly escalating or perpetuating' the same hostile environment Title IX charges universities with eliminating." (quoting *Doe v. Regents of the Univ. of Cal.*, 210 Cal. Rptr. 3d 479, 505 (2016))). We therefore reaffirmed that the cross-examination required by due process was "circumscribed." *Id.*

The issue of cross-examination appeared before us again in 2018, when we decided *Doe v. Baum*, 903 F.3d at 575. In *Baum*, plaintiff John Doe was accused of sexually assaulting a fellow undergraduate student, Jane Roe, at the University of Michigan. *Id*. at 578−79. The

university investigator initially found for Doe, but Roe appealed. *Id.* at 580. The internal appellate panel reviewed the investigator's report over the course of two closed sessions and reversed, finding that the evidence supported Roe's allegations because her description of events was "more credible" and her witnesses "more persuasive." *Id.* Doe agreed to withdraw rather than face expulsion from the university and sued shortly afterwards, arguing that the proceedings violated his due process rights. *Id.*

We agreed with Doe, holding that when a university's decision rests on a credibility determination, it must "facilitate some form of cross-examination in order to satisfy due process." *Id.* at 581. In doing so, we considered the significance of Doe's interests, the minimal burden on the university, and the university's interest in protecting victims. *Id.* at 582–83. Doe's interests were significant. *See id.* at 582 ("Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The student may be forced to withdraw from his classes and move out of his university housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled." (internal citations omitted)). The burden on the university was minimal because "the administration already has all the resources it needs to facilitate cross-examination and knows how to oversee the process." *Id.* Finally, the university had a legitimate interest in "avoiding procedures that may subject an alleged victim to further harm or harassment." *Id.* at 583. We reasoned that these interests could be accommodated, but did not justify denying cross-examination altogether. *Id.*

In *Baum*, we did not detail exactly what form of cross-examination is required, beyond its being in person and in front of the factfinder. *Id.* at 583. We did, however, give extensive justifications that can help give definition to the constitutional minimum. First, cross-examination allows the defendant (in this case, Doe) to "take[] aim at credibility" and "probe the witness's story to test her memory, intelligence, or potential ulterior motives." *Id.* at 582 (first quoting *Doe v. Univ. of Cincinnati*, 872 F.3d at 401). Second, it allows the factfinder to "observe the witness's demeanor under . . . questioning." *Id.* It follows, then, that the form of cross-examination required must allow for the defendant to probe the claimant's credibility and for the factfinder to observe the witness's demeanor under questioning.

2.

Throughout his complaint, Doe references the impact that the questions Roe 1 did not answer would have on "[r]easonable jurors." *See, e.g.*, R.22, Appellant's Br., 22. Despite Doe's characterization, the issue here is not whether answers to the questions to which Roe 1 did not respond would have impacted a reasonable juror's decision. *Univ. of Cincinnati*, 872 F.3d at 400 ("Review under *Mathews* asks only whether John Doe had an opportunity to respond, explain, and defend, not whether a jury could constitutionally convict him using the same procedures." (internal quotations omitted)). The issue is whether the University's procedures comported with the due process clause.[3] *Id.* To determine this, we examine whether the cross-examination afforded to Doe achieved the twin aims of *Baum*, and whether *Mathews* balancing supports a finding that the university was required to force Roe I to answer every question posed. We hold that the due process afforded to Doe throughout his three-day hearing, including extensive in person cross-examination of the claimants by his attorney, was more than sufficient to satisfy *Baum*, and that *Mathews* does not call for uncircumscribed cross-examination.

Doe was given an in person hearing that took place over the course of three days. Roe 1 and Roe 2 participated in the hearing, and both sides presented evidence and testimony. Doe had the opportunity to cross-examine both women through his counsel. In his complaint,[4] Doe alleges that

> The Resolution Officer permitted Jane Roe 1 to refuse to answer questions on cross-examination, without penalty or negative inference as a result.
>
> The Resolution Officer denied John Doe the opportunity to ask relevant questions on cross-examination through his counsel.

---

[3]Doe also argues on appeal that the district court "disregarded *Baum*'s requirement that the court draw 'all reasonable inferences in' Doe's 'favor' and thereupon reject Appellee's motion to dismiss if Doe's claim was 'at all plausible (beyond a wing and a prayer).'" R. 22, Appellant's Br., 10. Rather than being a dictate of *Baum*, this is the standard by which the district court must review motions to dismiss under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6). Because this court reviews denials of these motions de novo, we need not ask specifically whether the district court followed the correct standard and instead will look at the evidence with fresh eyes to determine whether, after drawing all inferences in Doe's favor, he plausibly stated a claim for relief. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("This court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim.")

[4]Because the district judge did not permit Doe to amend his complaint a second time, and we affirm that ruling, the complaint properly before this court is the First Amended Complaint.

DE32, First Am. Compl., Page ID 736.  Nowhere in *Baum*, *University of Cincinnati*, or *Cummins* does this court suggest that the accused in a university disciplinary proceeding is entitled to unlimited questioning of the alleged victims.[5]  They are entitled to "some form of cross-examination" that allows for a fact-finder to more accurately make a determination of credibility and to witness the claimant's demeanor on the stand.  *Baum*, 903 F.3d at 582.  Roe 1 and Roe 2 submitted to in person cross-examination where Doe could probe their credibility; Doe's only complaint is that they were not forced to answer every single question that his attorney posed to them.  Throughout the rest of the time that Roe 1 and Roe 2 were on the stand, the RO was able to watch their demeanor, both during testimony and in response to cross-examination, and Doe's attorney was able, with each witness, to "probe [her stories] to test her memory, intelligence, or potential ulterior motives."  *Id.* at 582.

To follow Doe's reasoning would be an expansion of *Baum*'s mandate for a circumscribed form of cross-examination and would open up witnesses to potential harassment at the hands of their accusers or their accusers' attorneys.  Doe's complaint does not plausibly suggest that the CHM's procedure fell short of the rule laid out in *Baum*.

In addition, Doe's claim fails the *Mathews* test.  First, we examine Doe's interests.  It is undisputed that Doe has significant interests at stake.  They include the completion of his degree, protecting his reputation and personal relationships, and potential harm to future education and employment.  DE32, First Am. Compl., Page ID 761−62; *see also Baum*, 903 F.3d at 582.  Second, we look at the risk of an erroneous deprivation of the current procedures, and the probative value of additional procedures. *Mathews*, 424 U.S. at 335.  As discussed above, the complainants in Doe's hearing were cross-examined by Doe's attorney in front of a neutral factfinder over the course of a three-day hearing where Doe was also permitted to present evidence.  Forcing the claimants to answer two additional categories of questions over the entire course of their cross-examination does not significantly add to the fact-finder's ability to test their credibility.  Finally, the court must consider the governmental interests involved.  *Mathews*,

---

[5]It is also worth noting that even in a full criminal trial the Supreme Court has recognized the importance of protecting victims of sexual violence from harassment on the stand.  *See Michigan v. Lucas*, 500 U.S. 145, 149−50 (1991).

424 U.S. at 335.  Requiring claimants to answer every question posed by the accused's attorney would not pose a significant administrative burden to the university, given that the procedures for an in person hearing and cross-examination are already in place.  However, this court has also discussed the university's interests in protecting victims of alleged sexual assault while on the stand.  *See, e.g.*, *University of Cincinnati*, 872 F.3d at 403; *Baum*, 903 F.3d at 583.  Forcing claimants to answer all questions could go against this interest.  Even in criminal trials, we do not expose victims of sexual assault to harassment in the form of unlimited cross-examination, and we will not unnecessarily do so in university proceedings.  On balance, while Doe has significant interests at stake, the additional safeguards proposed would not improve the proceedings.  This fact, combined with the school's strong interest in protecting the alleged victims, lead us to conclude that Doe has not met the requirements of the *Mathews* test.

Because the lengthy hearing, complete with in person cross-examination, gave the RO ample opportunity to judge credibility and view the witness's demeanor, and any probative value of forcing them to answer every question is outweighed by the university's interests, we affirm the district court's grant of the defendants' motion to dismiss.

IV.

For these reasons, we affirm both the district court's denial of Doe's motion to amend his complaint a second time and its grant of the defendants' motion to dismiss for failure to state a claim.

—————————

**CONCURRENCE**

—————————

NALBANDIAN, Circuit Judge, concurring. I concur with the majority's disposition of this case. But I write separately to emphasize a few points of disagreement.

First, although I agree with the majority's resolution, I think this is a much closer case than the majority implies. We have, of course, decided a series of cases dealing with the procedural protections afforded to students accused of misconduct. And based on what we've said, several facts here suggest that Doe's procedural protections must be at their apex. For one thing, Doe was accused of *criminal* wrongdoing rather than mere academic underperformance. "And where the deprivation is based on disciplinary misconduct, rather than academic performance, 'we conduct a more searching inquiry.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017) (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005)).

For another, the accusation wasn't just of generic criminal wrongdoing. Doe was accused of, and found by a preponderance of the evidence to have committed, sexual assault and other crimes. The nature of this particular accusation heightens Doe's private interest and thus the procedural protections to which due process entitles him. Indeed, "[t]ime and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct." *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018). That's because "[b]eing labeled a sex offender by a university has both an immediate and lasting impact on a student's life." *Id.* Such an accusation can have "a substantial lasting impact on appellants' personal lives, educational and employment opportunities, and reputations in the community." *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). So it's not just that Roe I and Roe II accused Doe of a crime. They accused him of serious sex crimes. This entitled Doe to an extra layer of procedural protection. *See Univ. of Cincinnati*, 872 F.3d at 400.

And, not surprisingly, Doe faced the most serious sanction a school can impose—expulsion. And "[l]onger suspensions or expulsions . . . may require more formal procedures." *Goss v. Lopez*, 419 U.S. 565, 584 (1975). After all, "[t]he more serious the deprivation, the more

demanding the process." *Univ. of Cincinnati*, 872 F.3d at 400; *see also Cummins*, 662 F. App'x at 446 (student who was placed on probation had a "diminished" interest under *Mathews* compared to suspended student). This is especially so in sexual misconduct cases. In such cases, "witness questioning may be particularly relevant to disciplinary cases involving claims of alleged sexual assault or harassment" because "[p]erpetrators often act in private, leaving the decision maker little choice but to weigh the alleged victim's word against that of the accused." *Univ. of Cincinnati*, 872 F.3d at 406. In other words, Doe's case turned on the university's assessment of two witnesses' credibility. And we've called these credibility contests "the most serious of cases." *Id.* at 401 (quoting *Flaim*, 418 F.3d at 636).

In short, Doe was accused of serious sexual misconduct rising to the level of a felony, and the university's resolution of the case turned on its assessment of witness credibility. It's hard to imagine a combination of facts entitling an accused to more robust process than this one. And in circumstances like these, where due process must be at its strongest, we should take care not to let an accuser's reluctance negate an accused student's right to cross-examination.

That's not to say that's what happened here. But recall why cross-examination is so important in cases like this. We've called cross-examination the greatest legal engine ever invented for the discovery of truth. *Baum*, 903 F.3d at 581. It "allow[s] the accused to identify inconsistencies in the other side's story, [and] also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted." *Id.* And even more than this, it enables the accused to "probe the witness's story to test her memory, intelligence, or potential ulterior motives." *Id.* at 582.

The problem is that, at some level, an accuser in a credibility contest involving allegations of a sexual crime can defeat meaningful cross-examination by refusing to answer questions that go to the heart and substance of the allegation. An accused can't identify inconsistencies in an accuser's story or probe her memory of the events if the accuser simply refuses to answer questions. The factfinder will not be able to evaluate a witness's credibility *as she discusses the incriminating event* if she refuses in the first place to discuss that event.

That all seems uncontroversial. If an accuser alleging a sexual crime refuses to appear at the hearing, it would violate due process for the university to sanction the student without giving him the right to cross-examine his accuser. Indeed, that's what happened in *University of Cincinnati*. 872 F.3d at 396–98. It also seems certain that a university violates due process by expelling a student for sexual misconduct in a credibility contest if his accuser appears at a *Baum* hearing but refuses to answer *any* questions on cross-examination. So the threshold for constitutionally sufficient cross-examination is somewhere between an accuser answering *no* questions and an accuser answering *every* question. Wherever that needle falls depends on the facts a specific case presents. And given the circumstances of Doe's case here, which combine to maximize the amount of process to which Doe is entitled, the threshold is necessarily much closer to the latter end.

Of course, we've never said an accused must receive unfettered cross-examination. But we can't answer whether a university vindicates an accused student's cross-examination right simply by looking at the *number* of questions an accuser was allowed not to answer. *See Doe v. Ohio St. Univ.*, 311 F. Supp. 3d 881, 889–93 (S.D. Ohio 2018). And that's where I part ways with the majority. *See ante* at 12–13. It may be the case that only a handful of questions or "categories" of questions can adequately test the veracity of the accuser's account. Perhaps there was only a single act of offending conduct, or the episode happened quickly. In that case, it's irrelevant if the accuser answers hundreds of questions on collateral matters. If the accuser's refusal to answer questions prevents the accused from probing her memory of the incriminating event or her consistency in recounting it, the cross-examination right is denied. *See Baum*, 903 F.3d at 582–83. It doesn't matter that the accuser only refused to answer a small fraction of the accused's questions.

So whether an accuser's refusal to answer questions gives rise to a due process violation depends in part on a combination of quantity *and* quality, on type and amount. The inquiry isn't categorical. It is, as a procedural due process question, fact intensive. And in university disciplinary proceedings, it's multidimensional. So it not only depends on the nature and number of questions the accuser refused to answer. It also depends on the nature of the accusation—what kind of conduct is alleged?—the nature of the proof—is it a credibility

contest?—and the nature of the penalty—is the student facing expulsion? And it may also depend on the nature of the specific questions that went unanswered. For instance, one of the questions that Doe is now claiming he was not permitted to ask goes both to the substantive truth of Roe 1's allegations (if she removed her own dress, she communicated consent) and her credibility as a witness (if she communicated consent, she either doesn't accurately remember the events or is lying about them). So it was doubly probative, Doe had a greater interest in having it answered, and it would've imposed a very small burden on the University to require Roe I to answer.[1]

All that said, I struggle to imagine a scenario where the constitutional floor is higher than it is here. But regardless, I believe that the University should prevail. Despite Doe's entitlement to robust procedure, the University afforded him enough process to satisfy the Constitution (at least as Doe has pled this case). It gave him a multi-day hearing where he presented evidence and cross-examined his accusers.

But more specifically, for the reasons given by the majority, I do not think that the record plainly establishes what questions Doe wanted to ask and whether he tried to ask them and was denied. Indeed, Doe's effort to amend his complaint to include the questions to which he apparently didn't receive a response is unsuccessful for a reason unrelated to its merits: it was untimely. And Doe's operative complaint says nothing about the form or content of the unanswered questions. It says only that "[t]he Resolution Officer permitted Jane Roe 1 to refuse to answer questions on cross-examination by John Doe's counsel, without penalty and without a negative inference as a result of her refusal to answer." But this threadbare allegation by itself doesn't suffice when the University gave Doe a lengthy hearing with extensive cross-examination. As I noted above, even a small number of unanswered questions can sometimes

---

[1]I don't mean to suggest that the only remedy available to a university when an accuser in a credibility contest refuses to answer questions on cross-examination is dismissing the charges against the accused student. It may be that the university can remedy the unanswered questions by striking the testimony of the accuser, as the criminal context sometimes allows. *See, e.g.*, *United States v. Stephens*, 492 F.2d 1367, 1375 (6th Cir. 1974) ("If the answer sought would have been so closely related to the crime for which the defendants were being tried, that the defendants may be substantially prejudiced by being deprived of their right to test the truth of the witness' direct testimony, the entire testimony of the witness should be stricken."). Likewise, the facts of a case may suggest that the university remedied a witness's silence by explicitly drawing a negative credibility inference during its factfinding.

grow into a due process violation.  It depends on a combination of quality and quantity.  But knowing little about the specific questions Roe I apparently didn't answer tells us nothing about whether the questions probe anything relevant, like the claim's truth or the accuser's consistency in recounting it.  That matters in a due process inquiry.

And that's also why the hearing transcript would be helpful.  Citing *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018), the majority correctly says a university must provide an accused student with the evidence against him.  But it then says there's "no indication" this includes a hearing transcript.  I'm not so sure.  And I don't think that follows from *Miami University*.  In that case we said the Constitution requires "that the student be provided the evidence against him."  *Id.* at 603.  And we said Doe alleged a cognizable due process claim because there was certain evidence the university used "*to adjudicate John's claim*, and John was not provided this evidence."  *Id.* (emphasis added).  So *Miami University* holds that the Constitution requires the university give to the accused the evidence it uses in adjudicating his claims.

It's unclear here if Michigan State relied on the *Baum* hearing transcript post-hoc to adjudicate Doe's claim.  If it did, Doe likely has a due process entitlement to it.  *See id.*  But Doe never asked for the transcript from his hearing.  So it doesn't look like Michigan State ever "refused to provide" it.  *Id.*  And the allegation about the missing transcript doesn't appear until Doe's second amended complaint, which isn't the operative complaint on appeal.  Thus, Doe's missing transcript cannot carry him past Michigan State's motion to dismiss.

*              *              *

Doe's case is a close one.  But ultimately, on this record, Michigan State didn't violate his due process rights.  That's not to say, however, that a university can never violate a student's due process rights by limiting—though not denying—cross-examination.  And to be fair, I don't read the majority opinion as saying as much.  Instead, I read it as saying that this particular combination of number and content of unanswered questions wasn't enough to make out a due process violation.  Thus, nothing in the majority precludes such a violation just because the number of unanswered questions was small.  The inquiry is fact intensive.  And although Doe's

circumstances here entitle him to the most robust process, Doe's complaint and this record don't state a due process claim.